WARREN POTTER and Another v. E. G. HOLMES and Another.[1]

July 3, 1896.

Nos. 9943—(204).

| 65 | 377 |
| s72 | 154 |
| 72 | 157 |
| s74 | 509 |
| 74 | 513 |

Contract for Sale — Payment after Inspection and Acceptance—Action for Price.

A contract by the parties hereto for the sale of railroad ties construed, and *held*, that payment therefor was to be made thirty days after the ties had been inspected, and accepted as complying with the contract, by a third party. *Held*, further, that the complaint in this action, which is for the recovery of the purchase price of the ties, failing to allege either such inspection and acceptance, or facts which would relieve the plaintiffs from the necessity of making and proving such allegation, it does not state a cause of action.

Appeal by defendants from an order of the district court for Aitkin county, Holland, J., denying a motion for a new trial, after a verdict in favor of plaintiffs for $11,370.47. Reversed.

[1] Reported in 68 N. W. 63.

*Warner, Richardson & Lawrence*, for appellants.

*Choate & Merrill* and *McClenahan & Manfor*, for respondents.

START, C. J.   This is an action upon a written contract, dated September 15, 1893, between the parties hereto for the sale and purchase of railroad ties, to recover the contract price thereof.   The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.   The demurrer was overruled, and they answered.   The trial resulted in a verdict for the plaintiffs for the amount claimed by them, and the defendants appealed from an order denying their motion for a new trial.

The only question which we find it necessary to discuss or decide is the proper construction to be given to the contract of the parties as to the time and manner of payment for the ties.   This question was raised by the demurrer and on the trial by exceptions to various rulings of the court.

The contract was made a part of the complaint, and was set out in full by annexing a copy thereto.   The defendants were the party of the first part and the plaintiffs the party of the second part in the contract, and the party of the first part thereby agreed to purchase and receive, and the party of the second part agreed to sell and deliver to them upon the terms and conditions therein specified, railroad ties of the quality and quantity therein stated.   The contract then specified the quantity, kind, size, quality, and price of the ties. The quantity was specified in these words: "All ties purchased and handled by the said second party until September 1st, 1894."   These words were written into the contract, and the balance thereof was printed except dates, designation of the kind of timber the ties were to be, and the words "100 per cent.," written over the words "seventy-five (75)," which were marked out of the contract as printed.   The other material portions of the contract are as follows:

"The said ties must be delivered at side tracks on the line of the Northern Pacific Railroad Company on or before the first day of September, 1894.   *   *   *   It is mutually agreed and understood between the parties hereto that, in case of any change in specifications by the Northern Pacific Railroad Company, immediate notice of such change shall be given said second party, and thereafter no ties conflicting therewith shall be furnished.   The parties of the first part agree to pay for all said ties that have been inspected and accepted by the Northern Pacific Railroad Company, except in cases

hereinafter specified, as follows: 100 per cent. thereof within 30 days after each inspection. And the said party of the second part, in consideration of the premises, hereby promises and agrees that until the ties to be delivered under this contract shall be inspected and accepted by the Northern Pacific Railroad Company the said party of the second part shall, and hereby does, assume all risk of loss or damage thereto from any cause whatsoever, including loss or damage occasioned by fire communicated by any engine or car of the Northern Pacific Railroad Company or its branches, or resulting in any manner from the negligence or misconduct of any of the servants or employés of the Northern Pacific Railroad Company. * * * And the said second party hereby agrees to handle over the said ties as they are being inspected, if required to do so by the inspector of the Northern Pacific Railroad Company."

The plaintiffs claim that the provision of the contract to the effect that the defendants were to pay for all ties inspected and accepted by the railroad company within 30 days after each inspection refers only to such ties as the railroad company should purchase of the defendants, and that all other ties were to be paid for upon delivery; and, further, that if there is any inconsistency in the terms of the contract the printed part must yield to the written portions. As a legal proposition, this is true, but there is no inconsistency between the written words of the contract specifying the quantity and kind of ties the defendants agreed to purchase and receive and its printed provisions as to the inspection of the ties and when they should be paid for. The plaintiffs' construction of these provisions for inspection and payment is not justified by the letter or spirit of the contract.

The several provisions of the contract must be read and construed together, and effect must be given to all of them if it can be done by any reasonable construction. The defendants, by the contract, agreed to purchase and receive "all ties purchased and handled by the said second party [the plaintiffs] until September 1, 1894," of the quality and upon the terms and conditions thereinafter specified. The contract then proceeds to specify the quality of the ties and the terms and conditions of the purchase. The written words used to designate the quantity of the ties to be purchased in no manner qualify these subsequent terms and conditions as to the quality, inspection, and payment of the ties. In this respect the contract stands precisely as it would if the quantity of the ties had been definitely stated therein at a given number. Having designated the quantity to be purchased, the

parties proceed to define the kind and quality of the ties, and to fix the place of delivery and the time of payment, viz. within 30 days after their inspection and acceptance by a third party as complying in kind and quality with the contract. If there had been no terms and conditions in the contract as to when payment was to be made, the law would imply a promise to pay on delivery; but the parties have not left the matter to rest on any legal implication, for they have expressly provided when payment shall be made.

The contention of the defendants that the ties were not to be paid for unless and until the railroad company purchased the ties of them, is as untenable as that contended for by plaintiffs. It may reasonably be inferred from the provisions of the contract considered as a whole that the parties understood that the defendants intended to sell the ties they agreed to buy of the plaintiffs to the railroad company, hence it was agreed upon as an arbiter to inspect and accept the ties as complying with the contract, and payment was to be made within 30 days after each inspection. In this respect the railroad company occupied the same position as an architect or civil engineer who is agreed upon to inspect work and give a certificate that the work is in accordance with the contract before payment therefor is to be made. St. Paul & N. P. R. Co. v. Bradbury, 42 Minn. 222, 44 N. W. 1. That this is the proper construction of this contract is apparent not only from the special provisions to which we have referred, but also from the other portions of the contract which we have quoted. Thus it was a part of the contract that the plaintiffs should handle the ties as they were inspected, if required by the inspector of the railroad company; and, further, the plaintiffs assumed all risks of loss or damage of or to the ties until inspected and accepted by the railroad company. The contract on the part of the plaintiffs was not completed as soon as the ties were delivered at the side tracks of the railroad company, and the claim of the plaintiffs that the purchase price was then due can only be sustained by arbitrarily reading out of the contract by construction all the terms and conditions upon which the purchase was made.

Such being the contract, it was necessary for the complaint to allege either that the ties had been inspected and accepted 30 days before the commencement of the action, or facts which would relieve the plaintiffs from the necessity of making and proving such allegation.

Johnson v. Howard, 20 Minn. 322·(370). It does neither, hence it does not state a cause of action.

Order denying the defendants' motion for a new trial must be reversed, and the case remanded, with direction to the district court to dismiss the action without prejudice, unless the plaintiffs can and are permitted to amend their complaint. So ordered.

CANTY, J. (dissenting). I cannot concur in the foregoing opinion except so far as it holds that the contract between the parties made. the inspector of the Northern Pacific Railroad Company the arbiter between plaintiffs and defendants to decide what ties were up to the standard specified in the contract. In my opinion, the only effect of the provision that the defendants "agree to pay for all said ties that have been inspected and accepted by the" railway company "within 30 days after each inspection" is to prevent the debt from coming due until after the end of such 30 days. And, plaintiffs having failed to allege the occurrence of this condition precedent to the accruing of their cause of action, it must be presumed that the action is premature. But it takes clear language to make one man the binding arbitrator of another man's rights. It is true that by a very liberal construction an agreement to that effect may be spelled out of this contract, but such liberal construction cannot be allowed. It is also true that, according to my interpretation of the contract, it is left to implication when defendants shall pay plaintiffs for the ties which the railway company refuse to accept. But the law will imply that much more readily than it will imply that defendants bound themselves to accept the inspection of the railway company as binding on them, when there is nothing in the contract even to show that defendants were by their contract with the railway company themselves bound to abide by that inspection. Of course, this may be suspected from the contract before us, but suspicion is not enough. By the terms of plaintiffs' contract, their whole claim, in my opinion, came due as soon as the railway company inspected the ties, and accepted a part and rejected the balance; that they were not bound by its inspection, but might show that ties inspected by it, and placed in one grade, were in fact up to the standard of a higher grade, and that ties rejected by it were in fact up to the standard specified in the contract.